United States Court of Appeals,

Eleventh Circuit.

No. 94-4583.

AMERICAN DREDGING COMPANY, as owner of the tug Marco Island, her engines, tackle, appurtenances, in a cause of exoneration from or limitation of liability in the matter of:, Plaintiff-Counter-Defendant-Appellant,

v.

Jose LAMBERT, as Personal Representative of the Estate of Alejandro Lambert, Kim Pietruszka, as Personal Representative of the Estate of Donald R. Pietruszka and Individually, Mario Perez, as Personal Representative of the Estate of Vivian Perez, Juan Renteria, Defendants-Counter-Claimants-Appellees,

Zacharia S. Gispan, Defendant-Counter-Claimant.

April 19, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-340-CIV), Edward B. Davis, Judge.

Before KRAVITCH, ANDERSON and BARKETT, Circuit Judges.

BARKETT, Circuit Judge:

American Dredging Company appeals from an adverse summary judgment denying its petition for exoneration from or limitation of liability for a nighttime collision involving one of its floating dredge pipelines and a motorboat carrying four passengers, three of whom died as a result of the collision. American Dredging also appeals from the district court's denial of its motion for partial summary judgment to preclude the decedents' representatives from recovering non-pecuniary damages in their wrongful death actions.

We affirm the grant of final summary judgment as to liability, and in light of the Supreme Court's recent ruling in *Yamaha Motor Corporation, U.S.A. v. Calhoun,* --- U.S. ----, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), we affirm the district court's ruling that

American Dredging potentially is liable to the representatives for non-pecuniary damages.

## I. Background

The collision giving rise to this action occurred in the early morning of November 23, 1991, in territorial waters adjacent to the Port of Miami. At approximately 2:30 a.m., Juan Renteria, Donald Pietruszka, Vivian Perez, and Alejandro Lambert [1] boarded a motorboat, which Lambert navigated toward Fisherman's Channel, where American Dredging was conducting a dredging operation. The dredge the "American," located in the channel near the Port of Miami, had approximately 1000 feet of dredge pipeline, supported by floating pontoons, trailing behind it. The dredge pipeline had flashing yellow lights on it, the number and location of which failed to meet statutory requirements.

About thirty minutes before the collision, a large barge and tug sought access to a dock at the Port of Miami, which the dredge "American" and the dredge pipeline were blocking. To permit access, American Dredging's tug the "Marco Island" divided the dredge pipeline and moved one part away. The ends of the broken pipeline did not have red lights on them, as required by statute.

With the dredge pipeline thus improperly illuminated, open, and a segment of it extending from the dredge "American" to the tug "Marco Island," the motorboat entered the channel. Lambert was navigating the boat in an easterly direction at approximately 30

---

[1] The defendants and counter-claimants in this action include Juan Renteria, the only passenger who survived the collision, and the personal representatives of the estates of decedents Alejandro Lambert, Donald Pietruszka, and Vivian Perez.

m.p.h. when it struck the dredge pipeline.  The motorboat broke apart, throwing its four passengers into the water.  The impact seriously injured Renteria, and killed Pietruszka, Lambert, and Perez.

American Dredging filed a petition in admiralty in the district court under 46 U.S.C.App. § 183, for exoneration from liability, contending that the collision was not a result of any negligence on its part;  and in the alternative, for limitation of liability, contending that the collision occurred as a result of negligent acts of which it had no knowledge.[2]  Renteria and the personal representatives of the estates of Pietruszka, Lambert, and Perez filed answers contesting American Dredging's right to exoneration from or limitation of liability, and counterclaimed seeking pecuniary and non-pecuniary damages resulting from American Dredging's negligent operation of its vessels and equipment.

The district court granted the motion for summary judgment, which Renteria and the personal representatives filed, finding that American Dredging's negligence precluded both exoneration as well as limitation of liability.  The court also denied American

---

[2]Section 183 provides in pertinent part:

> *The liability* of the owner of any vessel ... for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture, done, occasioned, or *incurred, without the privity or knowledge* of such owner or owners, *shall not ... exceed the amount or value of the* interest of such owner in such *vessel,* and her freight then pending.

46 U.S.C.App. § 183 (emphasis added).  Pursuant to § 183, American Dredging sought to limit its liability to an amount equal to the value of its vessel involved in the accident, $120,000.

Dredging's motion for partial summary judgment seeking to prevent the personal representatives from recovering non-pecuniary damages.

## II. Discussion

We review a grant of summary judgment *de novo,* applying the same legal standards which bound the district court. *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995). In admiralty, as in all civil cases, we consider the evidence in the light most favorable to the nonmoving party. *Flores v. Carnival Cruise Lines,* 47 F.3d 1120, 1122 (11th Cir.1995).

### A. Exoneration and Limitation of Liability

A shipowner is entitled to exoneration from all liability for a maritime collision only when it demonstrates that it is free from any contributory fault. *Tittle v. Aldacosta,* 544 F.2d 752, 755 (5th Cir.1977). The determination of whether a shipowner is entitled to limit liability, however, involves a two-step analysis which this Court explained in *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558 (11th Cir.1985):

> First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.

*Id*. at 1563-64 (citation & quotation omitted).

In this case, the district court determined first that the uncontroverted facts established that American Dredging violated statutory regulations designed to prevent the type of accident which occurred here. Among the cumulative evidence indicating noncompliance with 33 C.F.R. § 88.15, the district court noted that American Dredging had not placed red lights on the ends of the

newly divided dredge pipeline to indicate where vessels could pass, and that it placed flashing yellow lights only every 100 feet along the pipeline, instead of at 10-meter intervals as required under the statute to warn vessels of the presence of a pipeline across a navigable channel.

The court then found that American Dredging had failed to produce evidence to show that its negligence could not have been one of the causes of the accident.[3]  When a ship is involved in a collision and that ship is in violation of a statutory rule designed to prevent collisions, the burden shifts to the shipowner to prove that the violation was not a contributing cause of the collision.  *See, Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540, 1554 (11th Cir.1987).  Accordingly, the court found that American Dredging was negligent as a matter of law, that its negligence was a proximate cause of the accident, and that it was not entitled to exoneration from liability.

Once a claimant satisfies the initial burden of proving negligence or unseaworthiness, the burden of proof shifts to the shipowner trying to limit liability to prove lack of privity or knowledge.  *Hercules,* 768 F.2d at 1564.  "This burden is not met by simply proving a lack of actual knowledge, for privity and knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the

---

[3]While American Dredging argued that Lambert's operation of the motorboat was the sole cause of the accident, the district court never reached the issue of Lambert's potential negligence because it found that American Dredging did not adequately explain how its own negligence could not have been a contributing cause of the accident.

requisite knowledge." *Id.* (citation omitted). Thus, while knowledge may stem from an owner's personal participation in the negligence, *see Petition of M/V Sunshine, II,* 808 F.2d 762, 763 (11th Cir.1987), it also may exist where the owner "could have and should have obtained the information by reasonable inquiry or inspection," *Hercules,* 768 F.2d at 1577. In addition, when the shipowner is a corporation, privity or knowledge means the privity or knowledge of a managing agent, officer, or supervisory employee. *Id.* at 1574.

In this case, supervisory personnel had offices near the dredging site and were on the site often. With respect to this second step, the district court found that American Dredging could not carry its burden of showing that it had no privity or knowledge of the negligence. After reviewing the record, we agree, and accordingly, we affirm the grant of summary judgment denying American Dredging's petition for exoneration from or limitation of liability.

B. Non-pecuniary Damages

We now turn to the question of whether personal representatives may recover non-pecuniary damages in wrongful death actions involving non-seamen killed in territorial waters. The law governing the availability of non-pecuniary damages in admiralty actions has a long and convoluted history. However, in *Yamaha Motor Corporation, U.S.A. v. Calhoun,* --- U.S. ----, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), the Supreme Court has recently resolved the question presented in this appeal. In this case, the personal representatives sued for non-pecuniary damages under both federal

maritime law and Florida state law.  American Dredging took the position that prior caselaw provided for a uniform federal scheme that applied to all deaths governed by admiralty law and that displaced state non-pecuniary damages laws in actions involving non-seamen killed in territorial waters.  That position has now been rejected by the Supreme Court in *Yamaha*.  There, the Court held that, when the claimants are not seamen or longshore workers, federal maritime law does not displace state wrongful death and survival statutes permitting non-pecuniary damages in wrongful death actions arising out of accidents in territorial waters and that state remedies remain applicable in such cases.  Because, under *Calhoun*, no federal statute or common law precedent precludes the personal representatives from recovering non-pecuniary damages under Florida law, we affirm the denial of partial summary judgment on the issue of the recoverability of non-pecuniary damages.

## III. Conclusion

We AFFIRM the district court's grant of summary judgment to Renteria and the personal representatives on the issue of liability, and we AFFIRM the denial of partial summary judgment on the issue of the recoverability of non-pecuniary damages.