[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 10, 2003**
**THOMAS K. KAHN**
**CLERK**

No. 02-14991

_____

D. C. Docket No. 00-00942 CV-CG-L

CHARLES DESMOND TUCKER,

Plaintiff-Appellant,

versus

FRANK EDWARD FEARN,
JUDY FEARN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(June 10, 2003)**

Before BIRCH and HULL, Circuit Judges, and EDENFIELD[*], District Judge.

HULL, Circuit Judge:

In this admiralty case, plaintiff Charles Desmond Tucker seeks to recover

_____

[*]Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

for the death of his minor son, Charles Justin Tucker, who was killed in a boating collision. Plaintiff Tucker appeals from the district court's order precluding him from recovering loss of society damages in his wrongful death action under general maritime law. After review and oral argument, we affirm.

## I. BACKGROUND

Charles Justin Tucker was traveling on a 19-foot Wellcraft power boat when his boat collided with a 36-foot Pearson sailboat operated by defendants Frank and Judy Fearn (the "Fearns") in Alabama's territorial waters. Charles Justin Tucker died as a result of injuries received in this boating collision.

Because the collision occurred in territorial waters, plaintiff Charles Desmond Tucker ("Tucker") brought this wrongful death action against the Fearns under general maritime law. Tucker sought to recover nonpecuniary damages, in the form of loss of society damages, under general maritime law.[1] Tucker also brought state law claims under Alabama's wrongful death statute, Ala. Code § 6-5-410.

The Fearns moved to strike Tucker's general maritime claim for nonpecuniary damages because he was not financially dependent on his deceased

---

[1]Specifically, Tucker sought nonpecuniary damages for the loss of love, affection, and companionship of his deceased minor son and for his grief and anguish over his son's death.

minor son.  The district court entered an order granting the Fearns' motion to strike Tucker's claim for nonpecuniary damages and thereby limiting Tucker's potential recovery under general maritime law to pecuniary damages for the loss of his minor son.  Subsequently, the district court certified that "this order involves a controlling question of law as to which there is substantial ground for difference of opinion."  On September 13, 2002, this Court granted Tucker's petition for interlocutory review under 28 U.S.C. § 1292(b).

In this interlocutory appeal, the only issue is whether Tucker, as a nondependent parent, may recover loss of society damages for the wrongful death of his minor child under general maritime law.[2]  For the reasons outlined below, we conclude that the district court correctly determined that loss of society damages are not recoverable by Tucker in a wrongful death action under general maritime law.

## II.  DISCUSSION

To guide our analysis of this issue, we first consider the fundamental principles of admiralty law set forth by the Supreme Court in <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), and then in <u>Mobil Oil Corp. v. Higginbotham</u>, 436 U.S. 618 (1978), and <u>Miles v. Apex Marine Corp.</u>, 498 U.S.

---

[2]Whether Tucker may recover loss of society damages in a wrongful death action under general maritime law is a question of law that we review <u>de novo</u>.  <u>See</u> <u>King v. Moore</u>, 312 F.3d 1365, 1366 (11th Cir.), <u>cert. denied</u>, 123 S. Ct. 662 (2002).

19 (1990).

## A.  Moragne: Wrongful Death under General Maritime Law

In Moragne, the Supreme Court overruled its earlier decision in The Harrisburg[3] and created a wrongful death action under general maritime law for deaths occurring in state territorial waters.[4]  In doing so, the Supreme Court noted that Congress had enacted legislation to cover some but not all types of maritime wrongful deaths.  Id. at 397-98.  Specifically, the Death on the High Seas Act (DOHSA) had created a wrongful death action but only for all persons killed on the high seas.[5]  46 U.S.C. App. § 761 et seq.  Similarly, the Jones Act provided only seamen a right of recovery against their employers for negligence resulting in injury or death.  Moragne, 398 U.S. at 394; 46 U.S.C. § 688.  The Supreme Court observed, however, that Congress had not yet provided a statutory right of action

---

[3]119 U.S. 199 (1886).  In The Harrisburg, the Supreme Court "held that the general maritime law (a species of judge-made federal common law) did not afford a cause of action for wrongful death.  The Harrisburg Court said that wrongful-death actions are statutory and may not be created by judicial decree."  Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206 (1996) (discussing The Harrisburg).

[4]See In re Amtrack "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993, 121 F.3d 1421, 1428 (11th Cir. 1997) (noting that "Moragne . . . for the first time gave an admiralty common law right of action for wrongful death of non-seamen in state territorial waters").  The deceased in Moragne was a longshoreman.  Moragne, 398 U.S. at 376.

[5]DOHSA provides a cause of action "whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States."  46 U.S.C. App. § 761(a).

for wrongful deaths occurring in state territorial waters.[6]  Moragne, 398 U.S. at 397-98.  The Supreme Court reasoned that this was because Congress saw no need for such a federal statute because the States historically provided remedies for deaths occurring in their territorial waters.  Id. at 398.  Thus, the Supreme Court concluded that Congress's "failure to extend [DOHSA] to cover such deaths primarily reflected the lack of necessity for coverage by a federal statute."  Id. at 397; see also Miles, 498 U.S. at 24-25.

The Supreme Court in Moragne then discussed at length how a "transformation" in maritime law had begun in 1944 and that the emergence of the strict liability claim of "unseaworthiness" in federal maritime law had created inconsistencies in recovery for deaths on the high seas versus recovery for deaths on territorial waters under state statutes.  See Moragne, 398 U.S. at 399-400.  Thus, the Supreme Court in Moragne sought to eliminate these inconsistencies and render maritime wrongful death law uniform by creating a general maritime wrongful death action applicable in all waters, including state territorial waters.  See id. at 401-02.

In doing so in Moragne, the Supreme Court relied to a large extent on its

_____

[6]DOHSA does not cover deaths resulting from incidents occurring within state territorial waters—that is, deaths resulting from incidents occurring within three-miles of the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States.  See Moragne, 398 U.S. at 395.  Here, the parties do not dispute that the incident resulting in the death of Tucker's son occurred in Alabama's territorial waters.  The boats were being operated in the Inter-Coastal Waterway near Orange Beach, Baldwin County, Alabama.

5

determination that Congress enacted the Jones Act and DOHSA to further "the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'"[7] Id. at 402 (citation omitted). The Supreme Court further reasoned that "[o]ur recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies."[8] Id. at 401.

The Supreme Court's conclusion in Moragne also was motivated, in part, by the maritime principle that "special solicitude [be given] for the welfare of those men who undertook to venture upon hazardous and unpredictable sea voyages." Id. at 387. The Supreme Court observed that federal maritime law, as it then-existed, actually disadvantaged Jones Act seamen. Moragne, 398 U.S. at 395-96. Because the Jones Act preempts state law remedies for the death or injury of a seaman, the Supreme Court remarked that the "'strangest' anomaly" in maritime law was that a Jones Act seamen "is provided no remedy for death caused by unseaworthiness within territorial waters, while a [nonseaman] . . . does have such

---

[7]For instance, the Supreme Court stated that "the Jones Act was intended to achieve 'uniformity in the exercise of admiralty jurisdiction' by giving seamen a federal right to recover from their employers for negligence regardless of the location of the injury or death." Moragne, 398 U.S. at 401.

[8]In Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 820 (2001), the Supreme Court held that "[t]he maritime cause of action that Moragne established for unseaworthiness is equally available for negligence." In this case, plaintiff Tucker based his maritime claim on negligence rather than unseaworthiness.

6

a remedy when allowed by a state statute." Id. at 395-96 (emphasis added). Thus, the Supreme Court's recognition of a wrongful death action under general maritime law served to remedy a disparity for seaman that had existed prior to Moragne. See Miles, 498 U.S. at 30. In Moragne, the Supreme Court did not set forth the scope of the remedies available in a wrongful death action under general maritime law but left such development for future litigation. Moragne, 398 U.S. at 408.

## B.    Higginbotham: No Loss of Society Damages under DOHSA

Since Moragne, the Supreme Court has held that loss of society damages are not recoverable under DOHSA. See Higginbotham, 436 U.S. 618.

When the Supreme Court decided Higginbotham, DOHSA provided that "recovery . . . shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought . . . ." 46 U.S.C. App. § 762 (1975) (emphasis added).[9] The issue in Higginbotham was whether the explicit use of the term "pecuniary loss" implied that nonpecuniary damages were not available under DOHSA. Higginbotham, 436 U.S. at 619-20. Although the Supreme Court recognized that DOHSA "does not address every issue of

---

[9]The current version of 46 U.S.C. App. § 762(a) is identical to § 762 as it existed at the time Higginbotham was decided. Since Higginbotham, Congress has added subsection (b) to § 762, which provides: "If the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of any State . . . additional compensation for nonpecuniary damages for wrongful death of a decedent is recoverable." 46 U.S.C. App. § 762(b)(1).

7

wrongful-death law . . .[,] when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that [DOHSA] becomes meaningless." Id. at 625. The Supreme Court thus concluded that Congress had "limited survivors to recovery of their pecuniary losses." Id. at 623.

## C.  Miles: No Loss of Society Damages for Seamen Under Jones Act or General Maritime Law

In Miles, a unanimous Supreme Court also addressed whether recovery for loss of society damages was available for seamen under the Jones Act (based on negligence) and in a general maritime action (based on unseaworthiness). To aid its analysis of these issues, the Supreme Court "described Moragne at length because it exemplifies the fundamental principles that guide[d] [the Court's] decision." Miles, 498 U.S. at 27. Drawing from Moragne, the Supreme Court in Miles emphasized the need to look to "legislative enactments for policy guidance" and "achieve the uniform vindication of such policies[,]" stating as follows:

> We no longer live in an area when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress.

Miles, 498 U.S. at 27 (emphasis added).

In Miles, the Supreme Court first considered whether loss of society

8

damages were recoverable under the Jones Act. After analyzing the legislative history of the Jones Act, the Supreme Court determined that "Congress must have intended to incorporate the pecuniary limitation on damages." Id. at 32. Thus, the Supreme Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." Id.

The Miles plaintiff also presented a general maritime claim alleging that the decedent-seaman "had been killed as a result of the unseaworthiness of the vessel." Id. Because this claim was brought under general maritime law, the Supreme Court's first determination that loss of society damages were precluded under the Jones Act did not decide the second issue directly. See id. Nevertheless, the Supreme Court looked to the Jones Act for policy guidance and concluded that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." Id. at 32-33. The Supreme Court therefore held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." Id. at 33. In reaching this outcome in Miles, the Supreme Court noted that its decision "restore[d] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." Id. (emphasis added).

9

**D.    No Loss of Society Damages for Nonseamen**

Applying <u>Moragne</u>, <u>Higginbotham</u>, and <u>Miles</u>, we determine that nondependent survivors, such as Tucker, of nonseamen, such as Tucker's son, equally cannot recover loss of society damages in a wrongful death action under general maritime law.  We start our analysis with DOHSA, which the Supreme Court has recognized as being "the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right."  <u>Higginbotham</u>, 436 U.S. at 624.  In looking to DOHSA, we are particularly mindful of the Supreme Court's recent statement in <u>Norfolk Shipbuilding Drydock Corp. v. Garris</u>, 532 U.S. 811 (2001), that "[w]hile there is an established and continuing tradition of federal common lawmaking in admiralty, that law is to be developed, insofar as possible, to harmonize with the enactments of Congress in the field." <u>Id.</u> at 820 (internal quotation marks omitted) ("Because of Congress's extensive involvement in legislating causes of action for maritime personal injuries, it will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to allow, to leave further development to Congress.").

Further, DOHSA provides a wrongful death action in favor of <u>anyone</u> killed on the high seas, but limits recoverable damages in wrongful death suits to "pecuniary loss sustained by the persons for whose benefit the suit is brought."  46

10

U.S.C. App. §§ 761(a), 762(a). In light of this limitation, it would be inconsistent with Congress's "considered judgment" for this Court to permit the recovery that plaintiff Tucker seeks in this case under general maritime law.

Denying recovery to Tucker for loss of society damages is also consonant with the principle that courts seek a uniform vindication of federal maritime policies. It would be discordant for this Court to sanction additional remedies for deaths of nonseamen occurring in a state's territorial waters than (1) Congress has permitted under DOHSA for deaths of nonseamen occurring on the high seas, Higginbotham, 436 U.S. at 623, (2) Congress has permitted for seamen under the Jones Act, Miles, 498 U.S. at 32, and (3) the Supreme Court has allowed for seamen under general maritime law, Miles, 498 U.S. at 32-33.

We are also mindful that our decision comports with the "special solicitude" that admiralty law displays for seamen. Moragne, 398 U.S. at 398. A strange anomaly would result if we were to permit the survivors of nonseamen the right to recover loss of society damages while the survivors of seamen—the traditional wards of admiralty law—are barred from such recovery under the Jones Act and general maritime law. Because neither Congress nor the Supreme Court have ever indicated that admiralty law evinces any particular consideration for nonseamen, we decline to fashion a rule that would permit their survivors a more liberal recovery under general maritime law.

11

**E.      Tucker's <u>Gaudet</u> arguments**

Plaintiff Tucker primarily relies on the Supreme Court's decision in <u>Sea-Land Services, Inc. v. Gaudet</u>, 414 U.S. 573 (1974).  In <u>Gaudet</u>, the dependent widow <u>of a longshoreman</u> sought to recover loss of society damages in a wrongful death action under general maritime law.  <u>Id.</u> at 585-86.  The Supreme Court permitted the recovery of loss of society damages, stating that "our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction."  <u>Id.</u> at 588.  Tucker argues that <u>Gaudet</u> is broadly written and supports the proposition that loss of society damages are recoverable by nonseamen.

One problem for Tucker, however, is that the Supreme Court since has limited the applicability of <u>Gaudet</u> to its facts.  In <u>Miles</u>, the Supreme Court stated that "[t]he holding of <u>Gaudet</u> applies only in territorial waters, and it applies only to <u>longshoremen</u>."  <u>Miles</u>, 498 U.S. at 31 (emphasis added).  In fact, the Supreme Court in <u>Miles</u> indicated that <u>Gaudet</u> was no longer even applicable on its facts, in view of amendments made to the Longshore and Harbor Workers' Compensation Act in 1972.  <u>Miles</u>, 498 U.S. at 30 n.1.  Consequently, as the Sixth Circuit stated in <u>Miller v. American President Lines, Ltd.</u>, 989 F.2d 1450, 1459 (6th Cir. 1993), "[<u>Gaudet</u>] has therefore been condemned to a kind of legal limbo: limited to its

12

facts, inapplicable on its facts, yet not overruled."

The second hurdle for Tucker is that the plaintiff is <u>Gaudet</u> was a dependent widow, whereas Tucker is a nondependent survivor.  A number of other federal circuit courts have held explicitly that nondependent survivors may not recover loss of society damages in wrongful death actions for a nonseaman's death in territorial waters.  <u>See, e.g.</u>, <u>Wahlstrom v. Kawasaki Heavy Indus.</u>, 4 F.3d 1084, 1093 (2d Cir. 1993); <u>Anderson v. Whittaker Corp.</u>, 894 F.2d 804 (6th Cir. 1990); <u>Miles v. Melrose</u>, 882 F.2d 976 (5th Cir. 1989), <u>aff'd sub nom on other grounds</u>, <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19.  <u>But see</u> <u>Sutton v. Earles</u>, 26 F.3d 903 (9th Cir. 1994).[10]

## F.	Tucker's <u>Yamaha Motor</u> Arguments

Plaintiff Tucker also asserts that <u>Yamaha Motor Corp. v. Calhoun</u>, 516 U.S.

---

[10]On appeal, the parties focus on whether <u>nondependents</u> of nonseamen killed in territorial waters may recover loss of society damages.  There is a strong argument, however, that the pertinent threshold question is whether <u>any</u> survivors of nonseamen are entitled to recover loss of society damages and not whether nondependent survivors of nonseamen may recover loss of society damages.  This is because (1) it would still yield an anomalous result for dependent survivors of nonseamen to have greater recovery than dependent survivors of seamen and (2) allowing dependent survivors of nonseamen to recover loss of society damages would defeat the principle of achieving uniformity in admiralty law since loss of society damages are not recoverable under DOHSA and the Jones Act.  Additionally, the argument is made that an essentially pecuniary standard such as dependency should not provide the dividing line on this issue, given the nature of loss of society damages. <u>See</u> <u>Gaudet</u>, 414 U.S. at 585 ("The term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.").  Nonetheless, given that Tucker is a nondependent survivor, we decide today only that nondependent survivors of nonseamen cannot recover loss of society damages under general maritime law.

199 (1996), allows for the recovery of loss of society damages in this case. However, Yamaha Motor has no application to the issue here because it concerns the remedies available under a state's wrongful death statute and not the shape of the wrongful death action under federal general maritime law.

In Yamaha Motor, a twelve-year old girl was killed in a recreational jet ski accident in the territorial waters of Puerto Rico. Id. at 201-02. Her parents brought suit under Pennsylvania's wrongful death statute and sought recovery of loss of society damages. Id. at 202. The Supreme Court concluded that "the damages available for the jet ski death of [the girl] are properly governed by state law." Id. at 216.

Tucker's reliance on Yamaha Motor is misguided because that decision does not support the assertion that federal maritime law provides for loss of society recovery in this case. Rather, the significance of Yamaha Motor is how the Supreme Court concluded that DOHSA did not displace the application of state law in territorial waters and "preserve[d] the application of state statutes to deaths within territorial waters." Id. at 216, 215 n.13 ("Federal maritime law has long accommodated the States' interest in regulating maritime affairs within their territorial waters."). As this Court stated in In re Amtrack "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993, 121 F.3d 1421, 1426 (11th Cir. 1997), "[i]t goes without saying that the State of Alabama has a

14

sovereign interest in activities that occur within its territorial waters." In light of the State's interest, a State might offer a remedial scheme independent of, and more generous than, what federal law provides, so long as it is not in conflict with federal policies.[11] Yamaha Motor, 516 U.S. at 215 (citing Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 724 (1980)). Thus, Yamaha Motor concerns the applicability of state wrongful death statutes and does not contradict the Supreme Court's concerns in Miles and Moragne that courts achieve a uniform vindication of federal maritime policies.

Consequently, Yamaha Motor does not speak to Tucker's general maritime claims but would assist Tucker's separate state law claims only if Alabama's wrongful death statute permitted the recovery of loss of society damages.[12]

---

[11]The only restriction on the States' regulation of maritime affairs within their territorial waters is that "[p]ermissible state regulation . . . must be consistent with federal maritime principles and policies." Yamaha Motor, 516 U.S. at 215 n.13; see In re Amtrack, 121 F.3d at 1427 (concluding that although plaintiff had wrongful death action under Alabama's statute, "the federal maritime interests present in this action outweigh Alabama's interests in having its wrongful death statute apply in its entirety" and concluding that "applying the Alabama wrongful death act in this case so as to allow recovery for wrongful death based upon simple negligence only would deprive the litigants of substantive admiralty rights that must be applied given the exceedingly commercial nature of this incident") (emphasis added). It is noteworthy that Yamaha Motor involved a recreational jet ski accident, whereas In re Amtrack involved a traditionally commercial maritime incident. Yamaha Motor, 516 U.S. 201; In re Amtrack, 121 F.3d at 1422-23.

[12]Tucker's reliance on American Dredging Co. v. Lambert, 81 F.3d 127 (11th Cir. 1996), also is misplaced. American Dredging involved the deaths of nonseamen in Florida's territorial waters; the collision was between a floating dredge pipeline and a motorboat with four passengers, three of whom died. Id. at 128. Although the personal representatives of the deceased nonsemen in American Dredging did file claims under general maritime law, the issue on appeal focused on whether nonpecuniary damages were recoverable under Florida law. In American Dredging, this Court permitted recovery of nonpecuniary damages under Florida's

However, such recovery is not provided for by that statute either.[13]  See Ala. Code.

§ 6-5-410.

### III.  CONCLUSION

For the reasons stated above, we affirm the district court's order precluding

plaintiff Tucker, a nondependent survivor, from recovering loss of society

damages in his wrongful death action under general maritime law for the death of

his nonseaman son.

**AFFIRMED.**

---

wrongful death statutes because "federal maritime law does not displace state wrongful death and survival statutes permitting non-pecuniary damages in wrongful death actions arising out of accidents in territorial waters" and "no federal statute or common law precedent precludes the personal representatives from recovering non-pecuniary damages under Florida law."  Id. at 130-31.  The decision did not outline what nonpecuniary damages were sought.  American Dredging also did not appear to involve punitive damages, which were at issue in In re Amtrack.

[13]Tucker's complaint did seek recovery of punitive damages under Alabama's wrongful death statute.  However, subsequent to the order at issue in this interlocutory appeal, the district court granted summary judgment to the defendant Fearns on plaintiff Tucker's punitive damages claims under state law.  The district court determined that punitive damages under Alabama's wrongful death statute were not recoverable in light of this Court's decision in In re Amtrack, 121 F.3d 1421.  The district court's determination is not before this Court on interlocutory appeal, and we express no opinion on that issue.