United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2007

Charles R. Fulbruge III
Clerk

REVISED September 5, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30878

In Re: In the Matter of: AMERICAN RIVER TRANSPORTATION
COMPANY, as owner/operator of the Barge ART 529, seeking
exoneration from or limitation of liability

--------------------------

AMERICAN RIVER TRANSPORTATION COMPANY, as owner/operator
of the Barge ART 529

Petitioner - Appellee

v.

US MARITIME SERVICES, INC; ET AL

Defendants

LESTER ANTHONY ALLEMAND, individually and on behalf of his
deceased son, Jacques Allemand; EDNA H ALLEMAND,
individually and on behalf of her deceased son, Jacques
Allemand

Claimants - Appellants

_____

In Re: In the Matter of the Complaint of: AMERICAN RIVER
TRANSPORT COMPANY, as owner/operator of the Barge CONDO 2,
seeking exoneration from or limitation of liability

--------------------------

AMERICAN RIVER TRANSPORT COMPANY, as owner/operator
of the Barge CONDO2

Petitioner - Appellee

v.

US MARITIME SERVICES, INC; ET AL

                    Defendants

LESTER ANTHONY ALLEMAND, individually and on behalf of his
deceased son, Jacques Allemand; EDNA H ALLEMAND,
individually and on behalf of her deceased son, Jacques
Allemand

              Claimants - Appellants

              _____

         Appeal from the United States District Court
              for the Eastern District of Louisiana

              _____

Before HIGGINBOTHAM, WIENER, and PRADO, Circuit Judges.

Wiener, Circuit Judge:

    In February 2003, Jacques Allemand ("Jacques"), a longshoreman employed by Petitioner-Appellee American River Transportation Co. ("ARTCO"), died when he jumped from the barge on which he was employed into territorial waters in an attempt to save a co-worker who had fallen from the barge. Following the deaths of Jacques and his co-worker, ARTCO commenced Limitation of Liability Proceedings. Claimants-Appellants Lester Anthony Allemand and Edna Allemand ("the Allemands"), the divorced parents of Jacques, filed a claim in the proceedings. The district court granted summary judgment for ARTCO, dismissing the Allemands' wrongful death action seeking damages for loss of society. The court held that the Allemands could not recover for loss of society, because they had not been financially dependent on their son. As we agree with the district court that non-dependent parents may not recover for loss of

                              2

society in maritime wrongful death actions, we affirm.

### I. FACTS & PROCEEDINGS

**A.    Facts**

For purposes of this appeal, the material facts are uncontested. Jacques, the 24-year-old son of the Allemands, was a work-release inmate performing barge-cleaner services on ARTCO's Barge ART 529 on the Mississippi River. Jacques had been incarcerated for the five years immediately preceding his death. He had not provided any financial support to his parents, either before or after his incarceration.

Darnell Lane was also a work-release inmate performing barge-cleaner services on Barge ART 529. On the day in question, Lane was struck by water from a high-pressure hose on the barge, causing him to hit his head (which rendered him unconscious) and fall into the Mississippi River. Jacques jumped into the river in an attempt to rescue Lane. Jacques struggled to keep his head above water, but died when two moored ARTCO barges crashed into one another.

**B.    Prior Proceedings**

In June 2003, ARTCO commenced two Limitation of Liability Proceedings, later consolidated, in the Eastern District of Louisiana, pursuant to 46 App. U.S.C. § 181 et seq. In September 2003, the Allemands answered the complaint and made a claim for damages against ARTCO, both as Jacques's survivors and for their own loss of society caused by the wrongful death of their son. In

3

May 2005, ARTCO filed a motion for summary judgment against the Allemands, contending that, as non-dependent parents of the decedent, they could not recover damages for loss of society in a maritime wrongful death action. In June 2005, the district court orally granted ARCTCO's motion. The district court explained its reasoning:

> Looking at the trends in the Fifth Circuit and based on what I think the state of the law is now —— which definitely should be appealed because it's not clear —— is that I can't see the difference why a longshoreman's parents, as an example, don't have to be dependent, but everyone else who loses someone in state waters to an accident has to be dependent to recover.
>
> It's clear that the law is that all nonlongshoremen who are killed in state waters, in order for their survivors to recover loss of society, they must be dependent survivors. That's a clear statement of the law. The mental gymnastics I'm having trouble with is making the leap as to why a longshoreman would be different.[1]

The district court indicated that an immediate appeal was appropriate, closing the case for statistical purposes at that time. The Allemands timely filed notices of appeal.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3).[2] We review a district court's grant of

---

[1] Although we agree with the district court's conclusion, it overstates the clarity of the state of the law for nonlongshoremen, at least in this circuit.

[2] Section 1292(a)(3) provides that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory

4

summary judgment in an admiralty or maritime action <u>de</u> <u>novo</u>.[3] Whether non-pecuniary damages are recoverable is a legal question subject to <u>de</u> <u>novo</u> review.[4]

**B.    Evolution of the Maritime Wrongful Death Cause of Action**

In 1886, the Supreme Court held in <u>The Harrisburg</u> that there was no cause of action for wrongful death in maritime law.[5] The harshness of this holding was softened by the Supreme Court's later ruling in <u>The Hamilton</u>, in which the Court held that suits grounded in state wrongful death causes of action could be brought in the federal courts when the death occurred in a state's territorial waters.[6] Although federal courts began "uniformly appl[ying] state wrongful death statutes for deaths occurring in state territorial waters,"[7] <u>The Harrisburg</u>'s proscription against maritime wrongful death actions survived.

In 1920, however, Congress "rejected wholesale the rule

---

decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

[3]    <u>Holmes v. Atl. Sounding Co., Inc.</u>, 437 F.3d 441, 445 (5th Cir. 2006).

[4]    <u>Moore v. M/V ANGELA</u>, 353 F.3d 376, 383 (5th Cir. 2003).

[5]    119 U.S. 199 (1886).

[6]    207 U.S. 398, 407 (1907).

[7]    <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 24 (1990).

against wrongful death"[8] when it enacted the Jones Act and the Death on the High Seas Act ("DOHSA"). The Jones Act created a wrongful death cause of action, sounding in negligence, when a seaman is killed during the course of his employment[9]; DOHSA created a similar cause of action, sounding in either negligence or unseaworthiness, when anyone is killed on the high seas (i.e., outside territorial waters), whether or not death occurs during the course of employment.[10] Both of these statutes limit recovery for wrongful death to pecuniary damages.[11]

This series of events produced three anomalies: (1) "[I]n territorial waters, general maritime law allowed a remedy for unseaworthiness resulting in injury, but not for death"; (2) "DOHSA allowed a remedy for death resulting from unseaworthiness on the high seas, but general maritime law did not allow such recovery for a similar death in territorial waters"; and (3) "in those States whose statutes allowed a claim for wrongful death resulting from unseaworthiness, recovery was available for the death of a

---

[8] Id. at 23 (explaining evolution of maritime wrongful death cause of action).

[9] 46 U.S.C. App. § 688.

[10] 46 U.S.C. App. §§ 761, 762.

[11] 46 U.S.C. App. § 762 (DOHSA explicitly limits damages to pecuniary damages, unless death results from a commercial aviation accident); Miles, 498 U.S. at 32 (explaining that, despite absence of explicit limit on form of damages in the Jones Act, "[t]here is no recovery for loss of society in a Jones Act wrongful death action").

6

longshoreman due to unseaworthiness, but not for the death of a Jones Act seaman."[12]  In <u>Moragne v. States Marine Lines, Inc.</u>, the Supreme Court remedied these anomalies by overruling <u>The Harrisburg</u> and recognizing the existence of a general maritime wrongful death action.[13]  The Court reasoned that "[w]here death is caused by the breach of a duty imposed by federal maritime law, Congress has established [through the passage of the Jones Act and DOHSA] a policy favoring recovery in the absence of a legislative direction to except a particular class of cases."[14]

Although <u>Moragne</u> recognized a general maritime wrongful death cause of action, it did not define the contours of such a claim. Then, in <u>Sea-Land Services Inc. v. Gaudet</u>,[15] the Court addressed a claim that had been asserted by the widow of a longshoreman who died as a result of injuries sustained in territorial waters.  The Supreme Court held that the maritime wrongful death cause of action allowed "the decedent's dependents [to] recover damages for their loss of support, services, and society, as well as funeral expenses."[16]  In so holding, the Court recognized that allowing a claim for loss of society damages deviated from DOHSA's limitation

---

[12]    <u>Miles</u>, 498 U.S. at 26.

[13]    398 U.S. 375, 378, 392-94 (1970).

[14]    <u>Id.</u> at 393.

[15]    414 U.S. 573 (1974).

[16]    <u>Id.</u> at 584.

of recovery to pecuniary damages, but it nevertheless determined that such a result was "compelled if [the Court was] to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction."[17] Thus, the Gaudet Court recognized that "effectuating longstanding maritime policies trumped uniformity with DOHSA."[18]

Four years after it decided Gaudet, the Court began to reverse course when it decided Mobil Oil Corp. v. Higginbotham,[19] another case addressing the limits of the Moragne wrongful death cause of action. In Higginbotham, the Court gave priority to the goal of achieving uniformity between general maritime law and the Jones Act and DOHSA over the humanitarian goal of maritime law. Acknowledging that Gaudet had been broadly written without express reliance on the fact that the death occurred in territorial waters, the Court nevertheless concluded that Gaudet applied only to deaths that occurred on territorial waters.[20] Thus, as Higginbotham involved a death that occurred on the high seas, DOHSA and its express limitation on damages, rather than Gaudet, determined the

---

[17] Id. at 586-88.

[18] In re: Air Crash at Belle Harbor, New York on November 12, 2001, No. MDL 1448 (RWS), 2006 WL 1288298, at *18 (S.D.N.Y. May 9, 2006).

[19] 436 U.S. 618 (1978).

[20] Id. at 622-23.

damages available in the Moragne action.  Accordingly, the Court held that the decedent's survivor could not recover damages for loss of society.[21]

The Court was again called on to interpret the scope of damages recoverable in a maritime wrongful death action in Miles v. Apex Marine Corp.[22]  In Miles, the mother of a seaman who had died in territorial waters brought a wrongful death action, alleging negligence under the Jones Act and unseaworthiness under general maritime law.  The plaintiff sought, inter alia, damages for loss of society.  The jury found that the ship owner had been negligent but that the ship was seaworthy.  It also found that the decedent's mother was not dependent on the decedent, so that she was not entitled to damages for loss of society.[23]

On appeal to this court, the panel concluded as a matter of law that the ship had been unseaworthy, reviving the maritime wrongful death claim.  The panel therefore addressed whether the decedent's non-dependent mother was entitled to recover for loss of society.  Relying on an earlier Fifth Circuit opinion, we held in Miles that the mother was not entitled to such damages because she

---

[21]     Id. at 623–24.

[22]     498 U.S. 19 (1990).

[23]     Id. at 21–22.  The jury had been instructed that if it found that the plaintiff was not financially dependent on her son, she could not recover damages for loss of society.  Id. at 22.

had not been financially dependent on her son.[24]

The Supreme Court affirmed the judgment that the plaintiff in Miles was not entitled to recover for loss of society, but did so on different grounds. After again reviewing the teleology of the wrongful death cause of action, the Court held that loss of society damages are not recoverable in a general maritime action for the wrongful death of a Jones Act seaman.[25] Noting that there is no right of recovery whatsoever for loss of society in a Jones Act action, the Court reasoned that "[i]t would be inconsistent with [the Court's] place in the constitutional scheme were [it] to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence."[26] Accordingly, held the Court, there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

## C. The Allemands' Claim

Under the present state of the law, (1) Miles and the Jones Act recognize that a seaman's survivors have a cause of action for

---

[24] Miles v. Melrose, 882 F.2d 976, 985-87 (5th Cir. 1989), aff'd sub nom. on different grounds Miles v. Apex Marine Corp., 498 U.S. 19 (1990).

[25] Miles, 498 U.S. at 36. The Court also held that there is a general maritime cause of action for the wrongful death of a seaman, and that there is no survival claim for the lost income of a deceased Jones Act seaman. Id.

[26] Id. at 32-33.

wrongful death, whether the death occurred in territorial waters or on the high seas, limited, however, to pecuniary damages (and thus no damages for loss of society), regardless whether that cause of action is brought under the Jones Act, under DOHSA, or under general maritime law, and (2) Higginbotham and DOHSA recognize that the survivors of any person who dies on the high seas have a cause of action for wrongful death, also limited to pecuniary damages, whether that cause of action is brought under the Jones Act, DOHSA, or general maritime law. It is less than pellucid, though, what force, if any, Gaudet has in the wake of Miles.[27] We need not reach this issue, however, because the parties and the district court have framed the question here more narrowly, asking only whether the non-dependent survivors of a deceased longshoreman or

---

[27] The Supreme Court has observed that Gaudet is no longer applicable on its facts, because of amendments to the Longshore and Harbor Workers' Compensation Act. Miles, 498 U.S. at 30 n.1. Thus, Gaudet has "been condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled." Tucker v. Fearn, 333 F.3d 1216, 1223 (11th Cir. 2003) (quoting Miller v. Amer. President Lines, Ltd., 989 F.2d 1450, 1459 (6th Cir. 1993)). There is reason to doubt the continued applicability of Gaudet. One of the goals of maritime law is to provide special solicitude to seamen; it would be inconsistent with this goal for the survivors of nonseamen to have a greater right to recovery than the survivors of seamen. See Wahlstrom v. Kawasaki Heavy Indus., Ltd., 4 F.3d 1084, 1092 (2d Cir. 1993) (noting that "it would be anomalous to expand the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial of any such recovery to the beneficiaries of seamen."); cf. Tucker, 333 F.3d at 1223 n.10 ("There is a strong argument . . . that the pertinent threshold question is whether any survivors of nonseamen are entitled to recover loss of society damages and not whether non-dependent survivors of nonseamen may recover loss of society damages.").

harborworker may recover for loss of society when the death <u>occurs in state waters</u>.[28]  We conclude that they may not.

First, this result is consistent with our precedent.  Prior to the Supreme Court's ruling in <u>Miles</u> that no survivor of a seaman ⎯ whether dependent or not ⎯ can recover damages for loss of society in a <u>Moragne</u> wrongful death action, we twice addressed whether non-dependent survivors of seamen may recover for loss of society in a maritime wrongful death action.  In <u>Sistrunk v. Circle Bar Drilling Co.</u>,[29] parents of deceased seamen filed a maritime wrongful death action seeking damages for loss of society.  The district court entered judgment in favor of the parents, and the drilling company appealed.[30]

On appeal, we concluded that the parents were not entitled to damages for loss of society.[31]  In so holding, we observed that neither of the goals of maritime law ⎯ providing special

---

[28]    The Allemands also argue that non-dependent parents may bring a survival action under general maritime law.  The district court's ruling, however, only pertained to the Allemands' claim for loss of society and support, not their claim for survival, and judgment was not entered with respect to the survival claim.  Rather, the remaining claims were statistically closed and frozen, pending resolution of this appeal.  Accordingly, that portion of the appeal is not properly before us, as there is no judgment to review.

[29]    770 F.2d 455 (5th Cir. 1985).

[30]    <u>Id.</u> at 456.

[31]    The court noted, and we agree, that the <u>Gaudet</u> court's use of "the word 'dependents' in discussing the right to recover for loss of society, while lending support to our holding, is not dispositive."  <u>Id.</u> at 460 n.4.

12

solicitude to seamen and achieving uniformity in maritime law ——

would be achieved by allowing the <u>Sistrunk</u> parents to recover.

First, the goal of

> providing special solicitude to seamen . . . would not be furthered in any meaningful way by allowing the parents in this case to recover for loss of society. . . . To the extent that the purpose of admiralty's special solicitude to the survivors of seamen is to provide for their financial support, the special solicitude aim of admiralty has no relevance in this case. <u>The parents in this case were not dependent on their sons</u>.[32]

The <u>Sistrunk</u> panel continued:

> [T]he parents could not recover if the seamen's deaths occurred on the high seas or were the result of negligence but not of unseaworthiness. Admiralty cannot provide the parents solicitude at a voyage's outset when their right to recover for loss of society is dependent on the fortuity that the deaths occur in territorial waters and are caused by unseaworthiness.[33]

For the same reason, we concluded that the goal of achieving

uniformity in the law would not be furthered by allowing the

<u>Sistrunk</u> parents to recover. "[T]he parents have not explained why

this court should extend to them special solicitude when, but for

the happenstance that the seamen were killed in territorial waters

and by unseaworthiness, Congress would have denied them recovery

under DOHSA and the Jones Act."[34]  Accordingly, we held that "in a

general maritime wrongful death action under <u>Moragne</u>, non-dependent

parents may not recover for loss of society where their deceased

---

[32]    <u>Id.</u> at 460 (emphasis added).

[33]    <u>Id.</u>

[34]    <u>Id.</u>

13

children were killed in territorial waters and are survived by spouse and/or child."[35]

Sistrunk could arguably be limited to situations involving recovery attempts by non-dependent parents when there is also a surviving spouse or child. Not so in Miles v. Melrose, however, in which we confronted the issue "whether non-dependents may recover for loss of society when there is no surviving spouse or child, [an issue] . . . of first impression for this circuit."[36] We answered that query in the negative, concluding that the aims of maritime law would not be served by allowing recovery under such circumstances. We explained that, like the non-dependent parents in Sistrunk, the parents in Miles could not recover damages for loss of society under either DOHSA or the Jones Act; the fact that the Miles decedent had not been survived by a spouse or child did not alter the result.[37] As we had in Sistrunk, we concluded in Miles that the goal of achieving uniformity in maritime law was best served by denying recovery. With respect to the goal of providing solicitude to seamen, we concluded that "[s]ince the parents here were also not dependent on their son and since they too could not recover these damages under the Jones Act or DOHSA, we do not contravene maritime law's aim of providing special

---

[35]    Id. at 460-61.

[36]    882 F.2d 976, 987 (5th Cir. 1989), aff'd sub nom. on different grounds Miles v. Apex Marine Corp., 498 U.S. 19 (1990).

[37]    Id. at 987-88.

14

solicitude to seamen by denying them recovery for loss of society."[38]  Although the Supreme Court affirmed <u>Miles</u> on other grounds, its holding that there is no maritime cause of action for loss of society for the survivors of seamen — whether dependent or not — did not conflict with our reasoning.

Both <u>Miles</u> and <u>Sistrunk</u>, of course, involved seamen and are therefore distinguishable from this case.  The holdings in neither <u>Miles</u> or <u>Sistrunk</u>, however, rested on the fact that the decedents were seamen. Instead, we noted in both cases that the surviving parents would not have a cause of action under either the Jones Act <u>or DOHSA</u>; and DOHSA, of course, applies to both seamen and nonseamen.  If anything, the arguments in favor of denial of recovery advanced in <u>Sistrunk</u> and <u>Miles</u> are even stronger here, as "it would be anomalous to expand the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial of any such recovery to the beneficiaries of seamen."[39]

In addition, the circuit courts that have considered the instant issue have "almost unanimously" agreed with our approach in <u>Miles</u> and <u>Sistrunk</u>.[40]  Citing <u>Miles</u> and <u>Sistrunk</u>, the Second, Sixth, and Eleventh Circuits have held that a non-dependent parent of one

---

[38]    <u>Id.</u> at 988.

[39]    <u>Wahlstrom v. Kawasaki Heavy Indus., Ltd.</u>, 4 F.3d 1084, 1092 (2d Cir. 1993).

[40]    <u>Id.</u> at 1091-92 (collecting cases).

15

who dies in territorial waters on a pleasure craft (non-seafarers) may not recover for loss of society in a maritime wrongful death action.[41]  Although these cases did not involve longshoremen, their reasoning does not turn on the fact that the decedents were nonseafarers.[42]  Instead, the reasoning in each case turned on whether allowing recovery would further the twin goals of maritime law.

Appellants urge us to ignore this case law and instead adopt the Ninth Circuit's holding in Sutton v. Earles.[43]  In Sutton, non-dependent parents of several individuals who died on a pleasure craft sued for loss of society damages under general maritime law.[44]  The Ninth Circuit first concluded that Gaudet authorized recovery of damages for loss of society by the survivors of nonseamen and

---

[41]    Tucker v. Fearn, 333 F.3d 1216, 1218, 1222 (11th Cir. 2003) ("declin[ing] to fashion a rule that would permit [nonseamen's] survivors a more liberal recovery [than seamen's survivors] under general maritime law."); Wahlstrom, 4 F.3d at 1085, 1092 (holding that non-dependent parents of minor who died while on pleasure craft in territorial waters could not recover for loss of society in a maritime wrongful death cause of action); Anderson v. Whittaker Corp., 894 F.2d 804, 811-12 (6th Cir. 1990) (noting that it agreed with Miles's reasoning and holding that non-dependent parents of a decedent could not recover for loss of society in a general maritime wrongful death cause of action).

[42]    "By 'nonseafarers,' we mean persons who are neither seamen covered by the Jones Act, . . . nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act . . . ." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 n.2 (1996) (citations omitted).

[43]    26 F.3d 903, 914-15 (9th Cir. 1994).

[44]    Id. at 906, 914.

16

that neither the Jones Act nor DOHSA applied to limit the damages to pecuniary damages.  It further noted that both the Jones Act and DOHSA allow recovery by parents when there is no surviving spouse or child.  The court then responded to the argument that such damages should not be available to non-dependent parents:

> We do not consider ourselves free to give such weight [as the Second Circuit does in Wahlstrom] to the interest of uniformity, in light of Gaudet's explicit acknowledgement that it was creating a non-uniform category of damages in territorial waters, and the acknowledgements of non-uniformity in Higginbotham.  The fact that the death of a seaman in territorial waters leads to recovery only of pecuniary damages is dictated by statute, and that statute does not limit recoveries for the deaths of non-seamen.
>
> . . . .
>
> We decline, therefore, to limit Gaudet by drawing an unnecessary distinction between dependent and non-dependent parent plaintiffs in Moragne actions for determining the availability of loss-of-society damages. . . . Any lack of uniformity that is evidenced by our ruling inheres in the decision of the Supreme Court in Gaudet and in the actions of Congress in enacting DOHSA and the Jones Act.  We are in no position to disregard or modify either of those authorities, even if we were of such a mind. We therefore affirm the district court's award of loss-of-society damages without regard to dependency.[45]

Although we agree with Sutton that the dependent/non-dependent distinction is not explicitly required by the relevant statutes or Supreme Court precedent, we are not persuaded by Sutton's reasoning.  Sutton does not acknowledge the potentially limited force of Gaudet after being confined to its facts.  Neither does

---

[45]   Id. at 917 (internal citations and footnote omitted).

17

<u>Sutton</u> address the Supreme Court's more restrictive approach to maritime wrongful death causes of actions since <u>Gaudet</u>.[46] We decline to adopt <u>Sutton</u>'s holding. Instead, as we concluded in <u>Miles</u> and <u>Sistrunk</u>, and as the Second, Sixth, and Eleventh Circuits have agreed, we conclude that allowing recovery here would (1) impede uniformity by going against the substantial majority of the federal court decisions on this issue, and (2) create an anomaly by "expand[ing] the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial of any such recovery to the beneficiaries of seamen."[47]

Citing <u>Moragne</u> and <u>Gaudet</u>, the Allemands contend that "certainly it better becomes the humane and liberal character of proceedings in admiralty to give than withhold the remedy, when not required to withhold it by established and inflexible rules."[48] In the maritime cases following <u>Gaudet</u>, however, the Supreme Court has placed greater importance on conforming general maritime law with the statutes than on the "humanitarian policy" of maritime law.

As the Third Circuit noted

---

[46] Appellants also cite <u>Thompson v. Offshore Co.</u>, 440 F. Supp. 752, 765 (S.D. Tex. 1977), a district court case decided prior to <u>Sistrunk</u> and <u>Miles</u>.

[47] <u>Wahlstrom</u>, 4 F.3d at 1092.

[48] <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375, 387 (1970) (quoting <u>The Sea Gull</u>, 21 Fed. Cas. p. 909 (No. 12,578) (C.C. Md. 1865)); <u>see also</u> <u>Gaudet</u>, 414 U.S. at 588 ("[O]ur decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction.").

18

[o]ne trend that cannot be ignored is that the Court seems to be cutting back on plaintiffs' rights in maritime actions. Throughout the 1950s and 1960s, the Supreme Court expanded the rights of plaintiffs by generally allowing plaintiffs the benefit of whichever rule, state or federal, was more favorable to recovery. Moragne — or perhaps Gaudet — represented the apex of the Court's policy of expanding plaintiffs' rights in admiralty actions. Higginbotham, Tallentire, and Miles, in contrast, show a tendency on the part of the Court during the last two decades to reverse its policy of favoring seamen plaintiffs.[49]

The Allemands further urge that the dependent/non-dependent line is an inappropriate distinction to be drawn when the damages at issue are not intended to compensate for a financial loss. Specifically, they assert that "[i]f [loss of society] benefits are not economically based, there is no legitimate reason . . . for tying recovery for their loss to the irrelevant fact that the deceased loved one did not also aid in the support — a completely different loss which some family members might also sustain — of his beloved parents." Although this argument is not without some appeal, we have previously rejected it. We stated in Miles that

[s]ince loss of society is not a financial loss, restricting its recovery to dependents may seem unwarranted. However, tort law has never recognized a principle of awarding redress to all who are injured by an event, however wide the ripple. Strict liability, such as that for unseaworthiness, is based in part on the assumption that the defendant is best able to bear and distribute the cost of the risk of injury. But there are limits to a defendant's power to shift losses to the public. The larger and more amorphous the potential class of plaintiffs, the more difficult it is to estimate and insure against the risk in advance, weakening the

---

[49] Calhoun v. Yamaha Motor Corp., 40 F.3d 622, 636 (3d Cir.), aff'd 516 U.S. 199 (1996).

19

justification for imposing liability.  The number of plaintiffs who could allege a loss of love and affection as a result of the death of a dearly beloved seaman –– aunts and uncles, nieces and nephews, even friends and lovers –– necessitates that we draw a line between those who may recover for loss of society and those who may not.  The line suggested by the Supreme Court in Moragne and Gaudet, and by our own court in Sistrunk, the line between dependents and non-dependents, appears to be the most rational, efficient and fair.  It creates a finite, determinable class of beneficiaries.  It allows recovery for those with whom the creation of the wrongful death action was concerned: a seaman's dependents.[50]

We stand by this reasoning, and we agree with that of the Second Circuit in Wahlstrom to the effect that, whatever the merits of the Allemands' argument, "[c]ountervailing concerns nonetheless outweigh the force of this contention."[51]

### III. CONCLUSION

When we consider this case in the overall framework established by our prior holdings, those of the Second, Sixth, and Eleventh Circuits, and the more restrictive approach applied by the Supreme Court to non-pecuniary damages in Moragne wrongful death actions since Gaudet, we conclude that non-dependent parents of a longshoreman who died in territorial waters are not entitled to recover damages for loss of society.  For the reasons set forth above, the judgment of the district court is AFFIRMED.  As for the Allemands' appeal of the district court's "dismissal" of their survival claim, that appeal is DISMISSED, as the issue was not

---

[50]     882 F.2d at 988-89 (citations and quotation marks omitted).

[51]     Wahlstrom, 4 F.3d at 1092.

20

presented to or decided by the district court.